IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
BERTHA STEELE,                                          : CASE NO. 1:08-CV-1131
                                                        :
                            Plaintiff                   :
                                                        : ORDER GRANTING DEFENDANTS'
            -vs-                                        : MOTION FOR SUMMARY JUDGMENT
                                                        :
                                                        :
CITY OF CLEVELAND, et al.,                              :
                                                        :
                            Defendants.                 :
------------------------------------------------------- :


UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter arose when three officers from the City of Cleveland Police Department initiated and/or participated in a traffic stop of Aaron Steele on 8 May 2007, which resulted in Mr. Steele's death.  On 6 May 2008, plaintiff, Bertha Steele, Mr. Steele's mother, brought a claim, pursuant to 42 U.S.C. § 1983, against the police officers for excessive force and the City of Cleveland for failure to train the officers. Plaintiff's complaint also alleges claims for survivorship pain and suffering, willful, wanton and reckless conduct, and assault and battery against the officers.

On 1 August 2008, the City of Cleveland, and Cleveland police officers, William VanVerth, Todd Staimpel, and Robert Miles moved for summary judgment ( the "City," the "Officers," and collectively "defendants") (Docket #10).  Defendants argue that they are entitled to summary judgment because: (1) the Officers' actions were objectively

reasonable and, thus, did not violate Mr. Steel's constitutional rights; (2) the Officers' actions did "not violate clearly established constitutional rights of which a reasonable person would have known at the time of the incident"; (3) the use of force was justified and, therefore, privileged, defeating plaintiff's assault and battery claim; and (4) there is no evidence that the Officers acted with malicious purpose, in bad faith, or in a wanton and reckless manner as required to avoid immunity under O.R.C. §2744.03. Defendants support their motion with the affidavits of officers VanVerth, Staimpel, and Miles that state, among other things, that each officer fired his weapon because he was in fear of imminent danger believing that Mr. Steele intended to fire the gun that he held in his hand at the Officers.

Plaintiff filed her opposition to defendants' motion on 13 November 2008 (Docket #18). Plaintiff asserts that: (1) the Officers' use of force was objectively unreasonable as demonstrated by the fact that Mr. Steele was unarmed and attempting to reach for his driver's license when he was shot 16 times by the Officers; and (2) the Officers' conduct was willful, wanton, and reckless. Plaintiff states that "eyewitness accounts" support these facts, but she does not support her motion with affidavits of these witnesses or otherwise.

On 1 December 2008, defendants replied in support of their motion for summary judgment arguing that defendant did not meet her burden under Fed. R.Civ. P. 56(e) and did not present any facts which support her opposition and/or create a genuine issue of material fact. (Docket #19).

2

**I.     BACKGROUND**

On 8 May 2007, VanVerth and Staimpel were in their patrol car stopped at a traffic light at W. 73rd Avenue and Clark Avenue and saw a GMC Suburban vehicle with all of its windows broken out, down, or missing. (Affidavits of VanVerth and Staimpel, at ¶2, Exhibit A to defendants' motion for summary judgment). Loud music was emanating from the vehicle. (VanVerth and Staimpel affs. ¶2, Complaint at ¶11). VanVerth and Staimpel considered the vehicle suspicious and followed it until they learned from radio dispatch that the license plate was expired, at which time they activated their rooftop lights to affect a traffic stop. (VanVerth and Staimpel affs. ¶3). The vehicle "refused to comply" and did not stop until W. 82nd Street and Denison. Id. at ¶3-4. Plaintiff's complaint states that the traffic stop was initiated in the vicinity of 8300 Denison Avenue and that he came to a stop on West 82nd Street. (Complaint at ¶11).

Once the vehicle had stopped, VanVerth approached the driver's side of the vehicle while Staimpel approached the passenger side of the vehicle. (VanVerth and Staimpel affs. ¶4). According to Officers VanVerth and Staimpel, while they stood on either side of the vehicle, Mr. Steele repeatedly slid his "hand down his right side" despite being repeatedly ordered to keep his hands in plain view. Id. Because of Mr. Steele's movements, VanVerth asked Mr. Steele to exit the vehicle, which he refused to do. Id. ¶5 VanVerth then attempted to "escort" Mr. Steele from the vehicle and Mr. Steele continued to reach down his right side. Id. Staimpel states that Mr. Steele was uncooperative and "continued to make movements toward the driver floor area of the vehicle as well as underneath the front driver's seat." (Staimpel aff. ¶5). As VanVerth struggled to remove Mr. Steele from the vehicle, Mr. Steele broke VanVerth's grasp and

3

Staimpel came to assist VanVerth. (VanVerth and Staimpel affs ¶6). Officer Miles then arrived at the scene and informed VanVerth and Staimpel that Mr. Steele had a previous weapons charge. (VanVerth and Staimpel affs at ¶7, affidavit of Officer Miles at ¶6, Exhibit A to defendants' motion for summary judgment). Mr. Steele continued to refuse to comply with VanVerth and Staimpel's commands to exit the vehicle. (Miles aff. ¶7).

After learning of Mr. Steele's previous weapon charge, VanVerth let go of Mr. Steel's wrist (VanVerth aff. ¶7) and he and Staimpel stepped away from the vehicle, drew their service revolvers, and repeatedly ordered Mr. Steele out of the vehicle and to the ground. (VanVerth and Staimpel affs. ¶7, Miles aff. ¶7-8). Mr. Steele finally got out of the car and stood inside the driver's side door. (VanVerth, Staimpel and Miles affs. ¶8). Mr. Steele then "dove" back into the vehicle (VanVerth and Staimpel affs. ¶8) on top of a gun (VanVerth aff. ¶8). Officer Miles saw Mr. Steele lie "down on the floor of the vehicle and extended his arms into the vehicle toward the center area, reaching for something." (Miles aff. ¶9). VanVerth warned the other officers that Mr. Steele had a gun, moved around to the passenger side of the vehicle (VanVerth and Staimpel affs. ¶8, Miles aff. ¶10), and saw Mr. Steele point the gun directly at him (VanVerth aff. ¶9). As Mr. Steele attempted to get out of the car with the gun in his hand, Staimpel continued to warn the other officers that Mr. Steele had a gun and tried to wrestle the gun away from him. (Staimpel and VanVerth affs. ¶9, Miles aff. ¶11). Believing he was in imminent danger of being shot by Mr. Steele, VanVerth then fired his weapon at Mr. Steele. (VanVerth aff. ¶10). Staimpel heard a gun shot but continued to wrestle Mr. Steele until both men fell out of the car on to the ground (Staimpel aff. ¶10). Staimpel

4

believed he was imminent danger of being shot by Mr. Steele and also fired his weapon. Id.  Finally, Miles fired his weapon, also believing that Mr. Steel would either shoot him or the other officers.  (Miles aff. ¶12).  According to plaintiff, Mr. Steele was ordered to exit the vehicle and as he was being escorted out, he "broke away" from the officers and was shot 16 times. (Complaint ¶16).  After the shooting, Officer Miles requested assistance.  (VanVerth and Staimpel affs. ¶11, Miles aff. ¶13).  Mr. Steele was transported to MetroHealth Medical Center where he was pronounced dead at 3:25 p.m. (plaintiff's brief in opposition at p. 2).

## II.     SUMMARY JUDGMENT STANDARD

When "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment shall be entered in favor of a moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial", quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986), quoting Fed. R.

5

Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may

6

reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

### III. LAW AND ANALYSIS

### A. ¶1983 Claim

Plaintiff claims that the Officers' conduct violated Mr. Steele's Fourth Amendment right to be free from excessive force.  Defendants argue that the Officers' conduct towards Mr. Steele was not excessive and did not violate a clearly established constitutional right and, therefore, they are shielded by qualified immunity.

When a district court reviews a §1983 claim that alleges excessive force it must consider: (1) whether the officer violated the constitution by using excessive force; and then (2) decide if the officer is protected by qualified immunity because he did not violate clearly established federal law.  Wysong v. City of Heath, 260 Fed.Appx. 848, 854 (6th Cir. 2008).  The Supreme Court has held that these inquiries are distinct, Saucier v. Katz, 533 U.S. 194, 204 (2001).

Under this analysis, if Mr. Steele was resisting arrest and/or posed an imminent threat, as defendants' motion and supporting affidavits indicate, the Officers "did not use excessive force and certainly would be entitled to qualified immunity if they did."  See Wysong, 260 Fed.Appx. at 854.   The question then becomes whether plaintiff established any facts, as required by Fed. R. Civ. P. 56(e), to survive defendants' motion

    1.    Excessive Force.   The "objective reasonableness" test of the Fourth  Amendment applies to claims of excessive force.  Graham v. Connor, 490 U.S. 386, 394 (1989).  Reasonableness "must be judged from the perspective of a reasonable

7

officer on the scene, rather than with the 20/20 vision of hindsight[.]"  Id.  In determining reasonableness, the court must consider the facts of the case, including  (1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) whether the suspect is resisting arrest or attempting to flee.  Id. at 396.  There is "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case."  Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002).  The use of deadly force is constitutionally permissible if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others[.]"  Tennessee v. Garner, 471 U.S.1, 11 (1985); and see Livermore ex. rel. Rhom v. Lubelan, 476 F.3d 397, 404 (6th Cir. 2007).

The Officers each state that Mr. Steele was armed and that he threatened them with the gun.   Other than simply stating, without support, that Mr. Steele was "unarmed" in her brief in opposition, plaintiff has provided this Court with no evidence to contradict the Officers' affidavits.

Plaintiff also argues that a genuine issue of material fact regarding excessive force is established by the mere fact that Officers shot Mr. Steele 16 times.  Plaintiff cites Russo v. City of Cincinnati, 953 F.2d 1026 (6th Cir. 1992) and Hopkins v. Andaya, 958 F.2d 881 (9th Cir. 1992) in support of her proposition.  Both cases are distinguishable.  In Russo, the appellate court reversed summary judgment in favor of the city because there was a genuine issue of material fact as whether police officers' shooting their firearms 22 times was excessive.  Russo, 953 F.2d at 1045.  In so finding, the court noted that the suspect was armed only with knives, and that "ten to

8

twelve minutes elapsed" between rounds of gunshots, during which time the suspect dropped his knife. Id.  Similarly, in Hopkins, the suspect was unarmed and time had elapsed between police officer's initial shots and the deadly shots.  Here, Mr. Steele was armed with a firearm and there was no delay between the threat posed by Mr. Steele and the Officers' response.

There being no genuine issue of material fact to contradict the Officers' affidavits which state that they discharged their weapons believing themselves to be in imminent danger of being shot by Mr. Steele, this Court will find that the Officers did not violate Mr. Steele's constitutional rights by using excessive force.

2. Qualified Immunity.

Police officers are protected by qualified immunity unless their conduct violates "clearly established constitutional or statutory rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In analyzing qualified immunity cases, a two-step inquiry is required.  The court must first determine whether, the facts, based upon the applicable law and viewed in the light most favorable to the plaintiff demonstrate that a constitutional violation occurred. If so, the court then must determine if the violation involves "clearly established constitutional rights of which a reasonable person would have known."  Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir.1996), quoting Christophel v. Kukulinsky, 61 F.3d 479, 484 (6th Cir. 1995).  Qualified immunity is immunity from suit, not just immunity from damages. Crockett v. Cumberland College, 316 F.3d 571, 578 (6th Cir.2003).  It is not sufficient for a right to

be "clearly established" as a general proposition. Instead, it must be "clearly established" in the "more particularized, relevant sense" of the "specific context of the case.'" Saucier, 533 U.S. at 201.  A plaintiff is not required to argue precedent with "materially similar facts," but the precedent must give "fair warning" that the action in question is unconstitutional. Hope v. Pelzer, 536 U.S. 730, 740-41.

Plaintiff's sole argument that the Officers are not entitled to qualified immunity is that they used excessive force.  As this Court has already determined that the Officers did not use excessive force, plaintiff cannot establish the first part of the qualified immunity test. The Officers are entitled to qualified immunity.  The undisputed facts in this case show that no constitutional or statutory violation occurred and defendants will be entitled to summary judgment on plaintiff's §1983 claim.

### B. Failure to Train Claim

Plaintiff also seeks to hold the City liable because it "failed to adequately train and supervise [the Officers] concerning proper police procedure and constitutional limitations relative to the use of deadly force and the proper procedure for initiating traffic stops."  (Complaint ¶23).   A municipality's failure to train is generally not enough to establish a constitutional violation. City of Canton v. Harris, 489 U.S. at 389-90.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). (holding that when a municipality is "sued only because [it was] thought legally responsible" for the actions of its officers, it is "inconceivable" to hold the municipality liable if its officers inflict no constitutional harm, regardless of whether the municipality's policies might have "authorized" such harm.)  See also Frost v. Hawkins County Bd. of Educ., 851 F.2d 822, 827 (6th Cir. 1988) (interpreting Heller as holding that a municipality cannot be liable

when finding that plaintiff suffered no constitutional deprivation), cert. denied, 488 U.S. 981 (1988); Bowman v. Corrections Corp. of America, 350 F.3d 537, 545 (6th Cir. 2003) (agreeing with the district court's holding that without a constitutional violation of plaintiff's Eighth Amendment right by individual defendants, defendant prison could not be held liable for its policy, even if it were to encourage deliberate indifference); Ewolski v. City of Brunswick, 287 F.3d 492, 516 (6th Cir.2002) (citing Heller in finding no municipal liability when, viewing the facts in a light most favorable to the plaintiff, the record did not establish that any employee of the city inflicted a constitutional harm upon him).  Instead, facts establishing a failure to train can be used to make the required showing that a municipal policy or custom was the "moving force" behind an already established constitutional deprivation.  See Canton, 489 U.S. at 389.

Accordingly, plaintiff's failure-to-train claim, like his basic excessive force claim against the Officers, requires a predicate showing that the Officers violated Mr. Steele's Fourth Amendment right to be free from excessive force.  This Court's finding that the Officers were not liable for any constitutional deprivation against Mr. Steele forecloses the plaintiff's failure-to-train claim against the City.

**C.    State Law Claims**

Plaintiff claims that she is entitled to damages for the pain and suffering Mr. Steele endured prior to his death and for assault and battery upon Mr. Steele.  Plaintiff asserts that the Officers are not immune from these claims because their conduct was willful, wanton and reckless.

Ohio Revised Code §2744.03 states, in relevant part:

11

>    (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>    ...
>
>    (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
>    ...
>
>    (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

Based on the foregoing, the Officers have immunity unless plaintiff can show that they acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Plaintiff's only argument is that because the Officers shot an unarmed man 16 times while he was trying to comply with their instructions, they acted in a wanton and reckless manner.  Such an argument is unsupported by any case law or sufficient evidence under Fed. R.Civ. P. 56(e).  It is  also unpersuasive based on this Court's determination that the Officers did not act with excessive force and "necessarily forecloses the argument" that they acted in a willful, wanton, or reckless manner. See Cabaniss v. City of Riverside, 231 Fed.Appx. 407, 418 (6th Cir. 2007).  Thus, defendants are entitled to immunity from plaintiff's state law claims pursuant to § 2744.03 .

**IV.     CONCLUSION**

For the reasons set forth above, this Court grants defendants' motion for summary judgment with respect to all of plaintiff's claims against them and plaintiff's complaint is dismissed.

IT IS SO ORDERED.

/s/Lesley Wells<br>
UNITED STATES DISTRICT JUDGE

Dated: <u>4 March 2009</u>